UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 22-223(7) (NEB)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ABDIHAKIM ALI AHMED,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **GOVERNMENT'S POSITION REGARDING SENTENCING** |

The United States of America, by and through its attorneys, Daniel N. Rosen, United States Attorney for the District of Minnesota, and Rebecca E. Kline and Matthew C. Murphy, Assistant United States Attorneys, submits the following sentencing memorandum and respectfully requests that the Court impose a sentence of 57 months in prison.

Defendant Abdihakim Ali Ahmed, along with his co-conspirators, operated a Federal Child Nutrition Program meal site, sponsored by Feeding Our Future, through a shell company he created called ASA Limited LLC. In September 2020, the defendant registered ASA Limited LLC with the Minnesota Secretary of State. Four days later, the defendant applied for ASA Limited to operate a purported food site in the Federal Children Nutrition Program under the sponsorship of Feeding Our Future at the Gurey Deli, a small market located in a strip mall in St. Paul. The defendant submitted his application together with Aimee Bock, Feeding Our Future's executive director. Within just three weeks of creating the ASA Limited site, the

defendant and his co-conspirators claimed to be serving meals to 2,000 or 3,000 children each day, seven days a week.

During the one-year period from September 2020 to September 2021, the defendant and his co-conspirators claimed to have served more than 1.6 million meals at the ASA Limited site. In support of these claims, the defendant and his co-conspirators prepared and submitted numerous fraudulent meal counts and invoices.

The defendant also submitted multiple fake attendance rosters that purported to identify both the names and ages of approximately 2,000 children who attended the ASA Limited site's "after-school program" in September through December 2021. The lists of names and ages were fake. The defendant's roster spreadsheets contained a formula that inserted a random number between 7 and 17 in the age column for each "child" on the list.

The defendant also paid approximately $49,000 in kickbacks from ASA Limited LLC to Abdikerm Eidleh, the Feeding Our Future employee who served as the site support manager for the ASA Limited site. These payments were made to entities controlled by Eidleh, in order to disguise the nature of the kickback payments and to make them appear legitimate.

Rather than use fraudulently obtained money to serve meals or feed children, the defendant and his co-conspirators fraudulently misappropriated much of it. The defendant transferred hundreds of thousands of dollars to himself and other co-conspirators, which included transferring fraud proceeds to a shell company the defendant created called 1130 Holdings Inc. The defendant and his co-conspirators

also created another shell company called Five A's Projects LLC, and transferred more than $1 million in Federal Child Nutrition Program funds to the company. They used these funds to purchase the former location of Kelly's 19th Hole, a bar and restaurant in Brooklyn Park, Minnesota.

Ahmed was charged by indictment on September 13, 2022, with conspiracy to commit wire fraud (Count 1), wire fraud (Counts 2, 5, and 12), conspiracy to commit federal programs bribery (Count 15), federal programs bribery (Counts 21 and 26), conspiracy to commit money laundering (Count 41), and money laundering (Counts 50 and 58). Ahmed pleaded guilty to wire fraud (Count 12) and money laundering (Count 58) on March 24, 2025.

**SENTENCING RECOMMENDATION**

In *Gall v. United States*, the Supreme Court set forth the appropriate sentencing methodology. 552 U.S. 38, 49–50 (2007). The district court should first calculate the advisory Sentencing Guidelines range. *Id*. at 49. After calculating a defendant's advisory Sentencing Guidelines range and hearing from the parties, the district court must then consider the sentencing factors set forth in 18 U.S.C. § 3553(a) and make an individualized assessment based on the facts in arriving at an appropriate sentence. *Id*. at 49–50; *see also United States v. Ruvalcava-Perez*, 561 F.3d 883, 886 (8th Cir. 2009) ("In sentencing a defendant, the district court should first determine the appropriate Guidelines range, then evaluate whether a traditional departure is warranted, and finally decide whether or not to impose a guideline sentence after considering all the § 3553(a) sentencing factors.").

## A. Sentencing Guidelines Range

The government agrees with the Guidelines calculations contemplated in the PSR. The base offense level for Count 12 is 7. PSR ¶ 108. The offense level is increased by 18 levels because the loss was between $3.5 million and $9.5 million. PSR ¶ 109. The offense level is also increased by 2 levels because the offense involved fraud in connection with major disaster or emergency benefits. PSR ¶ 111. The base offense level for Count 58 is 27. PSR ¶ 116. The offense level for Count 58 is increased by 1 level because the defendant was convicted under 18 U.S.C. § 1957. PSR ¶ 117. Counts 12 and 58 group for guideline calculation purposes, resulting in the total adjusted offense level being 28. PSR ¶ 122. The total adjusted offense level is decreased by 3 levels pursuant to Guidelines § 3E1.1(a) and (b) because the defendant accepted responsibility in a timely manner. PSR ¶¶ 124-125. Finally, the defendant is entitled to a 2-level reduction because he meets the zero-point offender criteria set forth in Guidelines § 4C1.1(a). PSR ¶ 123. The defendant falls into Criminal History Category I.

With a total adjusted offense level of 23, and Criminal History Category I, the defendant's advisory Guidelines range is 46-57 months in prison. PSR ¶ 163. With a total adjusted offense level of 23, and Criminal History Category I, the defendant's Guidelines fine range is $20,000 to $200,000. PSR ¶ 175.

## B. Section 3553(a) Sentencing Factors

Section 3553(a) requires the Court to analyze several factors, including "the nature and circumstances of the offense," "the history and characteristics of the

defendant," "the need for the sentence to reflect the seriousness of the offense," "the need for deterrence," "the need to protect the public from further crimes of the defendant," and "the need to avoid unwarranted disparities." 18 U.S.C. § 3553(a).

**1. Nature and Circumstances of the Offense**

Ahmed participated in one of the largest fraud schemes in the history of the District of Minnesota, and the single largest Covid-19 fraud scheme in the country. He took money intended to feed children who no longer could get regular, nutritious meals at school, and used it to enhance his lifestyle. He knew she was not entitled to the money and that it was obtained by lying to the government about the number of children he allegedly served meals to. Simply put, he took advantage of a once-in-a-century global pandemic and the generosity of American taxpayers to enrich himself.

**2. History and Characteristics of the Defendant**

Ahmed was born in Somalia in 1985 and was the oldest of eight siblings. He moved to a refugee camp in Kenya in 1991 along with his entire family, where he was exposed to violence, sexual assault, and other traumatic events. In 1995, he moved to the United States along with his family. He has lived in Minnesota since 2000. He graduated from the University of Minnesota in 2008, though he had difficulty maintaining stable employment after graduating.

Ahmed married and had a daughter, but his wife took their daughter to the United Kingdom in February 2024 and has yet to return or stay in contact with him. He correlates this with his conduct in the instant case. Ahmed has suffered from anxiety, depression and alcohol use disorder throughout his adulthood.

Ahmed has been unemployed since his participation in the instant offense between 2020 and 2022. He resides with his parents at their home in Minneapolis.

**3. Deterrence, Respect for the Law, Just Punishment, and Protecting the Public**

The Court must also consider the need for the sentence to afford adequate deterrence, promote respect for the law, provide just punishment, and protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a).

Ahmed's crime must be viewed in context of the rampant fraud that has plagued Minnesota in recent years. Unprecedented levels of fraud perpetrated on public benefits programs in Minnesota have eroded trust in the government and raised questions about the sustainability of those programs. Too many people, Ahmed included, participate in this kind of fraud because, as they see it, everyone else is doing it. This cynical view must be stopped. It has undermined and endangered important government programs as well as legitimate nonprofit organizations that rely on donations to carry out actual charitable work.

On the other hand, Ahmed's conduct appears to be an aberration in an otherwise law-abiding life. He has no criminal history points and ultimately accepted responsibility for his conduct. His behavior, as well as his age, is indicative of someone who is unlikely to recidivate.

**4. The Need to Avoid Unwanted Disparities**

Finally, the Court must consider the need to avoid unwarranted disparities. 18 U.S.C. § 3553(a). As noted in the PSR, 91 percent of defendants sentenced within the

past four years under the same Guidelines provision, with the same offense level and criminal history as Ahmed, received a sentence of imprisonment. Those who were imprisoned received an average sentence of 36 months. The amount of money Ahmed received through fraud falls in the in the middle of the applicable loss bracket contained in § 2B1.1. However, given the egregious nature of the offense conduct, including, specifically, Ahmed's efforts to exploit a national crisis to enrich himself, an above average sentence is warranted.

## CONCLUSION

For the reasons stated above, the government respectfully requests that the Court impose a sentence of 57 months in prison.

Respectfully Submitted,

Dated: August 12, 2026

DANIEL N. ROSEN
United States Attorney

/s/ *Rebecca E. Kline*
BY: REBECCA E. KLINE
MATTHEW C. MURPHY
Assistant U.S. Attorneys